



**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re<br><br>SEAN ROBERT STODDARD,<br><br>Debtor. | ) | Case No. 17-22887-E-7 |
| PATSY CARTER and MONTY CARTER,<br><br>Plaintiffs,<br>v.<br>SEAN ROBERT STODDARD,<br><br>Defendant. | ) | Adv. Pro. No. 19-2119 |

**SUPPLEMENTAL FINDINGS AND CONCLUSIONS TO THOSE STATED ORALLY ON THE RECORD**

The court stated its Findings of Fact and Conclusions of Law on the Record at the final day of trial in the Adversary Proceeding in which Plaintiffs Patsy Carty and Monty Carter (collectively "Plaintiffs") asserted that debts arising from and related to medical treatment given by Sean Robert Stoddard, the "Defendant-Debtor" were nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) for fraud and/or § 523(a)(6) for willful and malicious injury to Plaintiffs . In preparing the Judgment, the court concludes that for the sake of clarity for the Parties and any court that may be reviewing this Court's Findings and Conclusions, this Supplement to the Findings and Conclusions is beneficial.

The court as part of the oral Findings and Conclusions stated the applicable case law of the United States Supreme Court and the Ninth Circuit Court of Appeals relating to the determination that a debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) for fraud or § 523(a)(6). In the oral Findings and Conclusions, the court reviewed the evidence presented and conflicting testimony by Plaintiffs' expert, a doctor, and Defendant-Debtor, also a doctor, and does not repeat them here. Both presented the court with their opinions as doctors concerning the medical treatment given Plaintiff Patsy Carter, a total ankle replacement.

Each provided their conflicting opinions, citing different medical resources, and their conflicting interpretations of x-rays of Plaintiff Patsy Carter when comparing them to x-rays of other persons, some identified as showing arthritis in an ankle and others stated to not show arthritis in an ankle.

As the court stated on the record, the court concludes that the Plaintiffs' expert and the Defendant-Debtor present their conflicting medical opinion as to whether a total ankle replacement was necessary or proper (as in the nature of a malpractice claim), but did not provide the court with evidence for the court to conclude that total ankle replacement was improper, known to be improper, and intentionally done by Defendant-Debtor knowing that it was not proper medical treatment.

As established by the U.S. Supreme Court and amplified by the Ninth Circuit Court of Appeals, for a debt to be nondischargeable as a willful and malicious injury, the conduct of the debtor must be done with the intention to cause the injury, not merely intentionally act, which act causes the injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 64 (1998). As in this Adversary Proceeding, the conduct at issue in *Geiger* was that of a doctor who provided medical services to the creditor, which the creditor asserted, and obtained a state court judgment for, constituted malpractice.

Though the doctor in *Geiger* intended to provide the medical treatment, then provided the medical treatment, and it was determined that providing such treatment constituted malpractice, "mere" malpractice, whether negligent or reckless conduct, did not constitute a willful and malicious injury. *Id*. at 64.

In a 2007 case, a decade after *Geiger*, the Ninth Circuit Court of Appeals addressed a claim

of malpractice asserted to be nondischargeable as a willful and malicious injury in *Ditto v. McCurdy*, 510 F.3d 1070 (9th Cir. 2008). In *Ditto*, the Ninth Circuit applied *Gieger* to an alleged failure to sufficiently inform a patient concerning the proposed medical treatment, such that the patient could not give informed consent and the medical treatment could constitute a medical battery. Though the tort of battery could be an intentional tort, the intentional conduct must be to either desire to injure the patient or the doctor have a "belief that the injury was substantially certain to occur." *Ditto v. McCurdy*, 510 F.3d at 1077-1078.

Though Plaintiffs argue that their expert established that any reasonable doctor, and even the Defendant-Debtor, had to have a belief that the injury was substantially certain to occur, the court concluded that such was not shown by a preponderance of the evidence.

In rereading Exhibit 1 presented by Plaintiffs, beginning on page 000074 starts a doctor's December 8, 2016 examination report by Jared Garrison, DO, of the Glenn Medical Center. This was from a December 8, 2016 examination, a little more than five months after the June 24, 2016, total ankle replacement surgery. The information provided by Dr. Garrison in his notes from the December 8, 2016 examination as to Plaintiff Patsy Carter's medical condition include:

- Under the History of Present Illness the "Pain Quality" is stated to be "Dull," the "Onset Mode" is "Gradual," the "Severity" is "Mild," and the "Progression" is "Improving."
- The Note under History of Present Illness continues, stating, "She does have some pain in her R ankle 6/10, she had a total joint repair in June 2016. She does use a walker to help with stability and balance. . . She says she finally starting to gain her independence back. . . ."
- Under the Physical Exam Constitutional section her "Distress" is stated to be "Mild Distress."
- A Note under this section includes, "She does have some contained valgus deformity of her right ankle her left ankle is pretty well outlined. She walks with her walker with a pretty Colchicine PAT."
- Under the Assessment section, Dr. Garrison states, "Osteoarthritis of the right ankle status post joint replacement doing pretty well. She is followed by a UC Davis for this."

Exhibit 1, pp. 000074-75. The court does not take this as a "verification" that the Defendant-Debtor did it right, but it indicates that another doctor's opinion and examination notes five months after the surgery do not indicate a failed surgery.

In an August 8, 2017 Chart Report/Letter by John Ancona, PA-c, from the U.C. Davis Medical Center to Ms. Linda Tremble at the Glenn Family Medical Group, it states that "we" saw the Plaintiff Patsy Carter on August 2, 2017, and that since her last visit (that date not stated), "[Plaintiff Patsy Carter] states that walking is a challenge for her since her ankle replacement but she can get around with her walker and cane. Whenever she tries to walk on her ankle it rolls over and she is left walking on her lateral malleolus." It states that "Of note we will also place a consult to a foot/ankle orthopedist specialist to see if anything could be done to help with her ankle." This examination at U.C. Davis is thirteen months after the July 13, 2016 surgery, and eight months after the December 2016 examination above in which no "urgent" ankle issues are identified. Exhibit 1, p. 000081-82.

As addressed in the Oral Findings and Conclusions, the court has been presented with evidence showing differing medical opinions about the surgery and post surgery condition of Plaintiff Patsy Carter. The condition as shown in the evidence "progressed," to that which led to Christopher Kreulen, M.D. providing Plaintiff Patsy Carter with the treatment option of the amputation after first seeing her on October 17, 2021 (Kreulen Direct Testimony Statement, ¶¶ 4, 6). Plaintiff Patsy Carter elected on October 27, 2017, ten days after first seeing Doctor Kreulen, to have her lower leg amputated. Kreulen Direct Testimony Statement, ¶ 8.

While Plaintiffs may be able to convince a court that Defendant-Debtor's conduct fell below the standard of care for a doctor providing such treatment, they have not shown that Defendant-Debtor intended to cause the injury to Plaintiff Patsy Carter that flowed from the total ankle replacement, nor that the Defendant-Debtor had a belief that the injury was substantially certain to occur. Though Plaintiffs' expert stated he had such conclusion from his review after the surgery and injury occurred, that Defendant-Debtor has such a belief, and that the court to find not credible Defendant-Debtor's testimony as to his belief in prescribing and doing the total ankle replacement, the court determines that Defendant-Debtor did not intend to injure Plaintiff Patsy Carter, nor did he know that the injuries that resulted from the surgery were substantially certain to occur.

Defendant-Debtor intended to do the total ankle replacement, but did not intend to cause the injury that came from it, nor did he have a belief that such injury was substantially certain to occur.

It has also been asserted that Defendant-Debtor committed nondischargeable fraud, it being that Defendant-Debtor misrepresented Plaintiff Patsy Carter's ankle condition, stating that it was sufficiently arthritic to warrant a total ankle replacement and that Plaintiff Patsy Carter was a proper candidate for such total ankle replacement surgery. Going through the well-established requirements for determination that a debt is nondischargeable based on fraud pursuant to 11 U.S.C. § 523(a)(2)(A), Plaintiffs assert that they have shown by a preponderance of the evidence that:

- Defendant-Debtor made the representations,
- Defendant-Debtor knew the representations were false,
- Defendant-Debtor made the misrepresentations with the intention and purpose of deceiving Plaintiffs,
- Plaintiffs justifiably relied on such representations, and
- Plaintiffs sustained losses and damages as the proximate result of Defendant-Debtor's misrepresentations.

The cases cited by the court as part of the oral Findings of Fact and Conclusions of Law include *Cohen v. de la Cruz*, 523 U.S. 213, 215 (1998). *American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1997).

Though Plaintiffs' expert's opinion was that the representations made by Defendant-Debtor were false and that Defendant-Debtor had to know they were false when he made them to Plaintiffs, the court has not so found. Defendant-Debtor's interpretation of the x-rays and Plaintiff Patsy Carter's condition may have been in error, and then Defendant-Debtor recommending and then conducting the total ankle replacement may have been a medical error, the court's conclusion is that Defendant-Debtor did not know them to be false and Defendant-Debtor did not make them with the purpose of deceiving the Plaintiffs.

After considering the testimony of Plaintiffs' expert witness and the supporting evidence, the court concludes that such evidence was not sufficient for the court to conclude that Defendant-Debtor's testimony and evidence of his knowledge and intentions were not credible. The court does not believe what Defendant-Debtor says merely because he said it, but considers it in light of the objective facts and evidence presented by Plaintiffs and Defendant-Debtor.

Additionally, as stated in the Oral Findings of Fact and Conclusions of Law, the court found

significant that after Defendant-Debtor recommended the total ankle replacement, and in reliance thereon Plaintiff Patsy Carter decided to have the total ankle replacement done a week later, another of Plaintiff Patsy Carter's doctors at the Glenn Medical Center conducted an examination and certified her fit for the surgery. While not opining on the condition of her ankle, Plaintiff Patsy Carter was seen by another doctor who, if he or she believed that she was rushing into surgery, had a professional responsibility to so advise their patient. Plaintiffs' Exhibit 1. Plaintiff Patsy Carter was not a "captive patient" of Defendant-Debtor, cut off from other medical professionals and rolled into surgery only with the knowledge of Defendant-Debtor. If Plaintiff Patsy Carter's other doctor thought that her conditions (obesity, diabetes, and the like) made surgery improper, they had the opportunity and responsibility to so advise their patient Patsy Carter.

It is very unfortunate that the medical treatment prescribed and done by the Defendant-Debtor did not correct Plaintiff Patsy Carter's ankle issues. However, based on the evidence presented, Defendant-Debtor prescribing and doing so did not constitute inflicting a willful and malicious injury on, or making a fraudulent misrepresentation to either of the Plaintiffs so as to render any malpractice or other tort or contract claim nondischargeable.

The court shall issue its separate judgment for Defendant-Debtor denying the relief sought by Plaintiffs.

**Dated:** August 23, 2021

**By the Court**

**Ronald H. Sargis, Judge**
**United States Bankruptcy Court**

# Instructions to Clerk of Court

**Service List - Not Part of Order/Judgment**

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _XXXX_, via the U.S. mail.

| **Debtor / Defendant-Debtor** | **Attorney for the Debtor / Defendant-Debtor** |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Plaintiffs** (if any) | Steven H. Schultz, Esq.<br>555 University Avenue, #154<br>Sacramento, CA 95825 |